**In re Isaias ARELLANO, Debtor.**

**Bankruptcy No. 14–00720–LT7.**

United States Bankruptcy Court, S.D. California.

Signed Sept. 26, 2014.

David Gutierrez, Law Office of David Gutierrez, Chula Vista, CA, for Debtor.

Ronald E. Stadtmueller, San Diego, CA, Trustee.

## MEMORANDUM DECISION ON CHAPTER 7 TRUSTEE'S OBJECTIONS TO DEBTOR'S CLAIM OF EXEMPTIONS

LAURA S. TAYLOR, Chief Judge.

Debtor Isaias Arellano filed a chapter 7 [1] bankruptcy case and concurrently filed a chapter 7 filing fee waiver application. His fee waiver request appeared meritorious given his limited income and the fact that neither his application nor his schedules evidenced an ability to pay the filing fee in installments. The Debtor's initial schedule C was consistent with this assumption, as the Debtor claimed limited exemptions. The Court, thus, granted the fee waiver request.

At the initial section 341(a) meeting, however, new information came to light. The Debtor, in response to questioning, identified additional personal property assets not previously disclosed. As a result, the Debtor amended his schedule B to add a credit union checking account with a balance of $4,958.65 and an anticipated tax refund of $2,000 based on an amended 2011 income tax return. Concurrent with scheduling the omitted assets, the Debtor modified his schedule C and claimed the omitted assets exempt pursuant to California Code of Civil Procedure ("CCP") § 703.140(b). The Debtor also paid the filing fee in full notwithstanding the fee waiver order.

Debtor's chapter 7 Trustee objected to the Debtor's newly claimed exemption of the omitted assets. As relevant here, he based his objection on the Debtor's alleged bad faith. Through his counsel's declara-

tion, the Debtor opposed and contested the allegations of bad-faith.

## DISCUSSION

The Bankruptcy Code authorizes a debtor to exempt certain assets. 11 U.S.C. § 522(b). The debtor's exercise of this right directly impacts creditors as exempt assets are not available for payment of either pre-petition claims or administrative expenses. 11 U.S.C. § 522(c), (k). Notwithstanding, the Bankruptcy Code allows a debtor significant latitude in selecting assets for exemption. The debtor also has significant flexibility in the timing of an exemption claim. Under Rule 1009(a), a debtor may amend his or her schedules, including to add or alter claimed exemptions, as a matter of course at any time prior to the closing of the case. *See also Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 630 (9th Cir. BAP 2010).

In the Ninth Circuit, however, a judicially created limit on this latitude and flexibility arose. It was accepted that a bankruptcy court could deny leave to amend or disallow a claimed exemption if the trustee or other party in interest timely objected and showed that either: (1) the debtor acted in bad faith; or (2) the creditors were prejudiced. *Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir.1998) (adopting the test set forth in *Doan v. Hudgins (In re Doan)*, 672 F.2d 831 (11th Cir.1982)); *see also In re Nicholson*, 435 B.R. at 630.

The United States Supreme Court's recent decision in *Law v. Siegel*, —— U.S. ——, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014), however, requires that the Court examine the continued viability of the *In re Michael* equitably based limitations. If

---

**1.** Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

these two exceptions are "clearly irreconcilable" with the reasoning and analysis of *Law v. Siegel*, the Court may neither deny exemption nor bar the Debtor's amendment to add an exemption based on bad faith and *In re Michael. See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.2003) (en banc) (where intervening Supreme Court authority is "clearly irreconcilable" with prior Ninth Circuit authority, the courts "should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled."); *see also Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir.2013) (courts may re-examine prior precedent when the reasoning or theory of that authority is "clearly irreconcilable" with the reasoning or theory of intervening higher authority).

 The Court acknowledges that tension between the Supreme Court authority and prior circuit precedent is not enough to require rejection of otherwise binding circuit authority. Instead, the Supreme Court must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable. *See Rodriguez*, 728 F.3d at 979 (internal citation omitted). Whether prior precedent is clearly irreconcilable thus focuses "on the *reasoning* and *analysis* in support of a holding, rather than the holding alone." *Id.* (internal citation omitted) (emphasis in original). And, that the intervening higher authority involved a different issue is not dispositive. *See id.* ("The issues presented in the two cases need not be identical in order for the intervening higher authority to be controlling.")

In *Law v. Siegel*, the Supreme Court held that the bankruptcy court exceeded both its statutory and equitable powers when it permitted the surcharge of Mr. Law's homestead exemption to pay administrative expenses incurred as a result of Mr. Law's misconduct. 134 S.Ct. at 1195–97. Mr. Law fabricated a lien against his home in an attempt to keep equity available in the home from his creditors. *Id.* at 1193. His chapter 7 trustee successfully challenged the lien and obtained a determination that Mr. Law had perpetrated a fraud. *Id.* The bankruptcy court, therefore, granted his trustee's motion to surcharge Mr. Law's entire homestead exemption and to use those funds as recompense for the trustee's related administrative costs and attorneys' fees. *Id.* On appeal, both the Bankruptcy Appellate Panel of the Ninth Circuit and the Ninth Circuit affirmed. *Id.* at 1193–94.

The Supreme Court reversed. At the outset, it determined that surcharge was "unauthorized [as] it contravened a specific provision of the Code." *Id.* at 1195. The Supreme Court first observed that section 522 and California law entitled Mr. Law to exempt equity in his home. *Id.* Second, it noted that section 522(k) expressly prohibited the use of exempt property for the payment of administrative expenses. *Id.* As the attorneys' fees incurred by the trustee were "indubitably an administrative expense," the Supreme Court concluded that the bankruptcy court violated section 522 by ordering the surcharge to pay such fees. *Id.*

The Supreme Court also rejected the argument that a bankruptcy court's exemption denial when based on its equitable powers, whether arising under section 105(a) or its inherent authority, could "comfortably coexist" with the Bankruptcy Code. *See id.* at 1195–97. Observing first that nothing in section 522 gave the bankruptcy court "discretion to grant or *withhold exemptions* based on whatever considerations [it] deem[s] appropriate," the

Supreme Court emphasized that section 522 vested discretion solely in the debtor to decide whether or not to claim an exemption. *Id.* at 1196 (emphasis added). Insofar as the debtor claimed to be entitled to a statutorily available exemption, "the [bankruptcy] court [could] not refuse to honor the exemption absent a valid *statutory* basis for doing so." *Id.* (emphasis added).

The Supreme Court further determined that section 522's thorough enumeration of exemptions—and exceptions to exemptions—"confirm[ed] that courts are *not authorized to create additional exceptions.*" *Id.* (emphasis added). It, thus, emphatically rebuffed the theory that the general, equitable powers of the bankruptcy court somehow conferred a basis for exemption denial based on a debtor's bad-faith conduct, resolving that the "Code admits no such power." *Id.* In doing so, it effectively abrogated three circuit court cases, including *In re Doan. See id.*

■ Thus, in *Law v. Siegel,* the Supreme Court made clear that where the Bankruptcy Code is silent, the only basis for denial of a state law exemption must arise under state law. *See id.* at 1196–97. And, the Supreme Court emphasized that "*federal law* provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." *Id.* at 1197 (emphasis in original).

Finally, the Supreme Court noted that there is no real distinction between disallowing or denying an exemption and barring a debtor from amending[2] his or her schedules to claim an exemption. *See id.* at 1196 ("[A]uthority to disallow an exemption ... [and] bar[ring] a debtor from amending his schedules to claim an exemption, ... is much the same thing....."). This conclusion is logical as the result of a denial of leave to amend is the same as exemption denial: the debtor is deprived of the benefit from the desired exemption.

The Court, thus, determines that its ability to disallow the Debtor's claimed exemptions in the omitted assets—whether indirectly by denying leave to amend to include a new exemption or directly by disallowing the exemption itself—when based solely on its equitable powers and the existence of bad-faith or prejudice is clearly irreconcilable with *Law v. Siegel.* First, it is reasonably assumed that the Trustee seeks an order denying the exemption so that the omitted assets are available for payment of administrative or pre-petition unsecured claims. Thus, disallowance of the exemption in the omitted assets would result in contravention of specific language of section 522(c) and (k). This is actually the same result that the Supreme Court found improper in *Law v. Siegel.*

Second, the only authority for disallowing the Debtor's claimed exemption in the omitted assets is the bankruptcy court's equitable powers. *See In re Nicholson,* 435 B.R. at 634 n. 5 (recognizing an objection to exemption based on bad-faith conduct is "a matter of federal common law pursuant to [s]ection 105(a) ... and the inherent powers of the bankruptcy court as courts of equity to protect the integrity

---

2. Moreover, the term "leave to amend" is inapt; as stated under Rule 1009, a debtor may amend a claimed exemption as a matter of course, without requesting leave to amend from the bankruptcy court. This is in contrast to the rule in the past that required application for leave to amend a petition or schedule. *See* General Order 11, General Orders and Forms in Bankruptcy of the United States Supreme Court (1939) (abrogated 1973). Thus, while at one time a material difference between amending a debtor's claim of exemptions and denying an exemption may have existed, it long ago became a distinction without a difference.

of the bankruptcy process."). Thus, although *Law v. Siegel* involved a facially distinct issue, that of surcharge allowing payment of administrative expenses, the Court cannot ignore the Supreme Court's clear mandate in the area of debtor exemptions: when a debtor properly asserts an exemption under section 522, it must be allowed unless the controlling law provides for disallowance. And this is true whether the debtor asserts the exemption at case initiation or at a later point before case closure. There is nothing in section 522 that provides for the denial or disallowance of an exemption based on a debtor's bad-faith conduct or prejudice to third parties. In short, the bankruptcy court's equitable powers are now an insufficient basis for exemption denial even if bad faith or prejudice exists.

The Court's conclusion is strengthened by *Law v. Siegel*'s effective abrogation of *In re Doan.* The Ninth Circuit in *In re Michael* adopted the bad-faith or prejudice exception to debtor exemptions from *Doan. See* 163 F.3d at 529. Given *Doan*'s abrogation, it follows that *In re Michael,* at least as to the bad-faith and prejudice exceptions, likewise effectively is abrogated. *See Rodriguez,* 728 F.3d at 979; *Miller,* 335 F.3d at 893.

To be clear, *Law v. Siegel* did not deprive this Court of the essential authority to respond to the Debtor's misconduct, if and when established, with meaningful sanctions. The Trustee's present objections to the claimed exemptions, however, cannot stand as a form of sanction when based on the Court's equitable powers. Such a sanction would enlarge the source of payment for administrative or unsecured claims in a manner directly contrary to section 522(c) and (k).

Further, as *Law v. Siegel* explained, the Code provides for no such grounds for exemption denial. Thus, any objection to

these CCP § 703.140(b) exemptions must arise under California law. *See Law v. Siegel,* 134 S.Ct. at 1196–97. The Trustee, however, supplied no basis for disallowance under California law, and expressly declined the invitation to further brief the issue.

## CONCLUSION

For the foregoing reasons, the Trustee's objections to the Debtor's claimed exemptions are OVERRULED.